## CUMBERLAND GLASS MFG. CO. v. UNITED STATES.

### No. J–102.

Court of Claims.
Nov. 3, 1930.

Spencer Gordon, of Washington, D. C. (Covington, Burling & Rublee, of Washington, D. C., on the brief), for plaintiff.

R. C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, and WILLIAMS, Judges.

WILLIAMS, Judge.

This is a suit for the recovery of income and excess-profits taxes in the sum of $10,-873.13, with interest thereon, alleged to have been overpaid for the fiscal year ended June 30, 1917.

Two questions are presented for determination:

1. (a) The amount of accrued depreciation the plaintiff is entitled to deduct from the cost of its plant assets as a reasonable allowance for exhaustion, wear, and tear of its property for the fiscal years from June 30, 1910, to June 30, 1916.

(b) The amount the plaintiff is entitled to deduct as a reasonable allowance for exhaustion, wear, and tear of its property for the fiscal year ended June 30, 1917.

2. Whether or not the plaintiff is entitled to a deduction for interest paid on its indebt-

edness during the taxable year 1917 which had accrued in prior years.

In the beginning there was a controversy as to the proper method of computing the 4 per cent. war income tax levied by section 4, title 1, of the Revenue Act of 1917 (40 Stat. 300), but the defendant now admits error in that regard.

The amount of accrued depreciation allowable for the years from 1910 to June 30, 1916, affects the consolidated invested capital for the fiscal year 1917, while the amount of depreciation to be taken for the fiscal year ended June 30, 1917, and the amount of allowable deduction for interest paid, during the year, affects the net income of the consolidated group for the year.

The Revenue Act of 1916, title 1, Act of September 8, 1916 (chapter 463, 39 Stat. 756), as amended by the Act of October 3, 1917 (chapter 63, 40 Stat. 300, §§ 1206, 1207), provides:

"Sec. 10. (a) That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from all sources by every corporation, * * * a tax of two per centum upon such income. * * *

"Sec. 12. (a) In the case of a corporation, * * *, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—* * *

"Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade; * * *

"Third. The amount of interest paid within the year on its indebtedness to an amount of such indebtedness not in excess of the sum of (a) the entire amount of the paid-up capital stock outstanding at the close of the year, * * * and (b) one-half of its interest-bearing indebtedness then outstanding. * * *

"Sec. 13. * * * (d) A corporation, * * * keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, may, subject to regulations made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return upon the basis upon which its accounts are kept, in which case the tax shall be computed upon its income as so returned."

The plaintiff kept its books upon the accrual basis. In its return for the fiscal year ended June 30, 1917, it reported the cost of assets of its consolidated companies as of June 30, 1916, $1,394,485.24 and an accrued depreciation to that date of $289,340.40.

The commissioner upon an audit of the returns determined the cost of the plant assets of plaintiff and its subsidiaries to June 30, 1916, to be $1,391,953.08 and the reserve for accumulated depreciation to that date $491,816.30.

Both parties accept cost of the plant assets in computing the depreciation reserve and the depreciation allowance for the taxable year.

The plaintiff, in determining the amount of depreciation to be charged off on its books each year during the period from June 30, 1910, to June 30, 1917, inclusive, and as now claimed, through its officers at the end of each year, made personal inspection of its plant and those of its subsidiaries, including building, machinery, and equipment, and in this way arrived at the amount of exhaustion, wear, and tear actually sustained during each year growing out of the use of the property in the business, and in so doing they gave due consideration to the actual use and operation of the plants, their cost, age, and useful life of the various types of assets, and to the repairs and improvements made thereto.

Improvements and repairs to the plaintiff's machinery and equipment between June 30, 1910, and June 30, 1916, were made chiefly by its own employees; the amount paid them for such work being charged as general expenses and was not capitalized.

The plaintiff at all times prior to June 30, 1916, kept its plant and equipment in good operating condition. Plaintiff's officials, who determined each year the depreciation charged off for the year, had been with the plaintiff companies for many years and had exact and technical knowledge of every item of its plant and equipment. The correctness of their determination that the amount charged off by them for the respective years from June 30, 1910, to June 30, 1917, was a reasonable allowance for exhaustion, wear, and tear of the property arising out of its use or employment, is not controverted except by the prima facie case made by the commissioner's finding that such was inadequate.

The commissioner in making his computation of the plaintiff's invested capital and accumulated depreciation as of June 30, 1916, accepted the book value of plaintiff's plant

and equipment on June 30, 1910, and apply-ing the "straight line" or "fixed percentage method" charged off an equal amount for depreciation for each year during the period to June 30, 1916, and determined the accrued depreciation for the years in question to be $202,475.90 greater than the amount shown on plaintiff's books. In determining the allowance for depreciation as a deduction for the taxable year 1917, the commissioner followed the same method and applied the same rates as he had used in determining the depreciation reserve to June 30, 1916.

What is reasonable allowance for "wear and tear" to be charged off by a taxpayer as depreciation is one of fact to be determined in each case by the peculiar facts of such case. While the commissioner's determination is presumptively correct, it must give way if the proof shows his computation is erroneous and not in consonance with the actual facts.

In the Otis Steel Co. Case, 6 B. T. A. 358, the Board of Tax Appeals, in a well-considered opinion discussing facts quite similar to those presented in the instant case, said:

"The depreciation written off on the books of petitioner, for the years 1912 to 1918, inclusive, results from an actual physical examination and inspection of its plant, machinery and equipment, made by the official in charge of production and one who, for over thirty years, had been in active touch with the business. He took into consideration the actual use and extent of operations of the plant, the cost and age of the various types of depreciable assets; had before him the experience of the company in the past, reflecting the useful life of its assets; and was intimately connected with repairs made to the machinery and equipment each year. With this information before it, the petitioner charged off depreciation. The amount to be charged off as depreciation has been changed by the respondent, both in years prior to and for the year 1918. We are of the opinion that the long experience of the official of petitioner and the relevant factors which he used in determining depreciation, are to be preferred to depreciation determined upon a straight-line basis. A straight-line basis for depreciation has been adopted by the Commissioner, writing off a specified percentage each year, quite apart from the actual conditions affecting depreciation. * * * We are of the opinion that the method used by petitioner, of establishing the depreciation actually sustained during the years in controversy, is more accurate and reasonable than the one used by the Commissioner.

"We have, after diligence, been unable to find any case where the courts have laid down the rule that depreciation is to be determined by theories or mathematics. The cases are legion, however, holding that the depreciation in each case must be determined from the facts of each particular case. In the Appeal of Kinsman Transit Co., 1 B. T. A. 552, we had occasion to pass upon the factors entering into the determination of a rate of depreciation, and stated:

"Depreciation is a matter of judgment, and must be determined from evidence rather than by mathematics or formulas."

In Marigold Garden Co. v. Commissioner, 6 B. T. A. 368, 371, the board said:

"From 1897 to 1915, during which period the books of the company were kept by one of its executive officers, the company had not accounted for depreciation at constant rates, nor according to any particular method of calculation. Such amounts were charged off as in the well considered opinion of its officers were sufficient to take care of the wear, tear and exhaustion actually sustained. They also charged to expense certain items which might properly have been capitalized. After 1915, when the books were kept under the supervision and direction of certified public accountants, such depreciation was charged off as the accountants advised was proper. The appraisal of 1916 indicated a higher value than that shown on the books. There is no evidence other than the result of a straight-line calculation to show that the depreciation on the books did not represent the actual depreciation sustained or that the property of the company had a value or was in a condition other than that shown by its books. The issue is controlled by Cleveland Home Brewing Co., 1 B. T. A. 87; Russell Milling Co., 1 B. T. A. 194, and Rub-No-More Co., 1 B. T. A. 228, and the Commissioner's action in reducing the earned surplus on account of alleged inadequate depreciation charged off in prior years is in error."

In Northwestern States Portland Cement Co. v. Commissioner, 7 B. T. A. 835, 845, the board held:

"There is no evidence whatever, to show that the depreciation sustained was greater than the amount charged off on the books. The respondent has set up a computation of estimated depreciation based on cost, and applying a fixed percentage rate per annum, thereby endeavoring to substitute a 'straight-

line' method for the years gone by, in lieu of the depreciation which was charged off on the books. We have repeatedly held that depreciation is a question of fact and that a readjustment of the depreciation reserve, resulting in a reduction of invested capital, may not be based merely on a formula or method of computation. Cleveland Home Brewing Co., 1 B. T. A. 87; Russell Milling Co., 1 B. T. A. 194; Rub-No-More Co., 1 B. T. A. 228; Otis Steel Co., 6 B. T. A. 358. See also Haugh & Keenan Storage & Transfer Co. v. Heiner [D. C.] 20 F.(2d) 921."

The rule announced by the board in these cases is sustained by numerous decisions of the courts. Haugh & Keenan Storage & Transfer Co. v. Heiner (D. C.) 20 F.(2d) 921, 923; Southern Bell Telephone & Telegraph Co. v. Railroad Commission of South Carolina (D. C.) 5 F.(2d) 77; Pacific Telephone & Telegraph Co. v. Whitcomb (D. C.) 12 F.(2d) 279; Geuder, Paeschke & Frey Co. v. Commissioner (C. C. A.) 41 F.(2d) 308, 309.

In Geuder, Paeschke & Frey Co., supra, the court said:

"In the years prior to 1918 petitioner charged off depreciation on these physical assets at varying rates. This was done for the reason that replacements of machinery parts, prompt and adequate repairs, and careful attention in various years arrested the ordinary depreciation, and kept the machinery in proper condition and prolonged its useful life. The cost of such repairs and replacements was not charged to capital investment, but, on the contrary, was charged to operating expense; and at the time petitioner made its return, and subsequently at the hearing, it was absolutely impossible to determine how much petitioner had expended for such repairs and replacements during the previous years of the company's existence. * * *

"In arriving at his figures of depreciation the Commissioner proceeded on the theory that the books and records of petitioner did not provide depreciation in the manner prescribed by the Department (which, without question, is the best method); therefore it must be presumed that depreciation was not provided for at all. He therefore arbitrarily determined that the invested capital and surplus in the assets referred to were less, by $259,184.25, than the actual capital and surplus as determined by the corporation and as shown on its books of account. He accomplishes this result, in effect, by saying that he allows taxpayer to take depreciation at certain percentages, which he calls permissible rates of depreciation. These percentages of depreciation from 1898 to 1917, inclusive, were applied by Commissioner regardless of petitioner's contention that it had adequately provided for depreciation by renewals and replacements and proper maintenance of its assets, the expense of which was charged to operating expense, thereby reducing its surplus as effectually as a charge to a depreciation reserve would do. * * *

"Theoretically this is quite a safe procedure in the absence of better evidence; but in this particular case there were machines that had been in use as long as forty-five years and were still rendering proper service, due to keeping them in good repair and promptly replacing all broken parts, and making such renewals as were necessary. This fact proves conclusively that no rule or rate can in all instances accurately measure depreciation. While it may form a safe basis for a prima facie case, it must give way to the facts in each particular case if those facts are presented and are inconsistent with the rate. * * *

"In the instant case the officers of taxpayer, who have been closely and continuously associated with it for thirty years or more, are positive in their testimony that the amount of depreciation sustained during the preceding years is identical with the amount charged off by taxpayer. This we regard sufficient, under the decisions of the Board from which we have quoted, to overcome the prima facie case made by the Commissioner's finding. This position is fully supported by Haugh & Keenan Storage & Transfer Co. v. Heiner (D. C.) 20 F.(2d) 921."

The allowance on account of exhaustion, wear, and tear of property, commonly known as depreciation, is based upon the principle of allowing the taxpayer a return of capital invested in the business before subjecting his earnings therefrom to tax. Recognition is given to the fact that physical assets are constantly being reduced in value on account of exhaustion, wear, and tear thereof incident to its use in a trade or business.

Neither the statute nor the regulations of the Treasury Department undertake to fix any definite rate of allowable deduction on account of depreciation of any class of property, the statute providing that it shall be a reasonable allowance, and the regulations requiring in substance the same with due regard to the amount invested and the useful life of the property in the business.

In the instant case the depreciation charged off each year for the period from

June 30, 1910, to June 30, 1916, was determined by officials of the company who had been connected with the management for many years and who possessed accurate and technical knowledge of the plant, its assets, and equipment. They were familiar with the actual use and operation of the plant, knew the age, cost, and probable useful life of its various items of equipment, and the current cost of repairs and replacements.

That they acted in the utmost good faith and exercised their best judgment in estimating the depreciation charged off each year is not questioned.

While the straight-line or fixed percentage method used by the commissioner in determining plaintiff's allowable depreciation for the years from June 30, 1910, to and including the fiscal year ended June 30, 1917, is the one most generally used in determining depreciation for tax purposes, and is quite generally accepted as the simplest and most accurate of the various methods used, computation made on that basis can not stand where the facts in a particular case, as here, show that the result reached by the use of such methods would not be a reasonable allowance within the meaning of the statute.

The facts in the case bring it within the rule announced in the decisions cited that depreciation in each case must be determined by the particular facts of such case, and that a computation based on a fixed percentage deduction during estimated probable useful life will not be accepted as the reasonable allowance provided by the statute where the facts show the actual depreciation sustained and charged upon the books was reasonable, and was an amount different from that found by the use of such method of computation. We think the method used by the plaintiff for determining depreciation during the year in controversy established more accurately than the straight-line method used by the commissioner the reasonable allowance for wear and tear it was entitled to charge off its books each year.

The plaintiff, therefore, was entitled to have its taxes for the fiscal year ended June 30, 1917, assessed on the basis of cost of its consolidated plant assets as of June 30, 1916, $1,394,485.34, with an accrued depreciation to that date of $289,340.40, and was entitled to an allowance for depreciation for the fiscal year 1917 the sum of $108,443.77.

The second issue involved is whether the plaintiff is entitled to a deduction from income for the year 1917 for interest paid on indebtedness during the year which had accrued and was due before the beginning of the year.

The plaintiff contends it is entitled to such deduction, basing its claim on the authority of Brilliant Coal Co. v. United States, 59 Ct. Cl. 481, where it was held—

"There seems room for no other conclusion than that under the revenue acts of 1916 and 1917 deduction was authorized of interest on indebtedness 'paid' during the year whether accrued during that or preceding years."

Since the decision of this court in the Brilliant Coal Co. Case, the Supreme Court has construed sections 12(a) and 13(d) of the Revenue Acts of 1916 and 1917. In United States v. Anderson et al., 269 U. S. 422, 46 S. Ct. 131, 133, 70 L. Ed. 347, the taxpayer sought a deduction from income for the year 1917 for taxes which were paid in that year but which accrued in the year 1916. The court, holding that the deduction must be taken for the year 1916, in which the taxes accrued notwithstanding their actual payment in 1917, said:

"While section 12(a) taken by itself would appear to require the income tax return to be made on the basis of actual receipts and disbursements, it is to be read with section 13(d) * * * providing in substance that a corporation keeping its books on a basis other than receipts and disbursements, may make its return on that basis provided it is one which reflects income. * * * Treasury Decision 2433 * * * recognized the right of the corporation to deduct all accruals and reserves, without distinction, made on its books to meet liabilities, provided the return included income accrued, and, as made, reflected true net income. * * * A consideration of the difficulties involved in the preparation of an income account on a strict basis of receipts and disbursements * * * indicates with no uncertainty the purpose of sections 12(a) and 13(d) * * * to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis. The (corporation's) true income * * * could not have been determined without deducting from its gross income for the year the total cost and expenses attributable to the produc-

tion of that income during the year. \* \* \* In the economic and bookkeeping sense with which the statute and Treasury decision were concerned the [munitions] taxes had accrued. It should be noted that section 13(d) makes no use of the words 'accrue' or 'accrual' but merely provides for a return upon the basis upon which the taxpayer's accounts are kept, if it reflects income. \* \* \* We do not think that the Treasury Decision contemplated a return on any other basis when it used the terms 'accrued' and 'accrual' and provided for the deduction by the taxpayer of items 'accrued on their books.' "

The rule announced in the Anderson Case was reaffirmed in American National Co. v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946.

Since the instant case was submitted, the Supreme Court in Niles Bement Pond Co. v. United States, 281 U. S. 357, 50 S. Ct. 251, 74 L. Ed. 901, decided April 14, 1930, again discussing sections 12(a) and 13(d) of the 1916 act, said:

"Section 13(d) of the Revenue Act of 1916, c. 463, 39 Stat. 756, in force until the Act of 1918 became effective, provided that a corporate taxpayer 'keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, may, subject to regulations made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return upon the basis upon which its accounts are kept, in which case the tax shall be computed upon its income as so returned.' Treasury Decision 2433 of January 8, 1917, interpreting this section, states: 'This ruling contemplates that income and authorized deductions should be computed and accounted for on the same basis,' and Income Tax Ruling, January–June, 1921, Cum. Bulletin No. 4, p. 147, provides: 'Section 13(d) of the Revenue Act of 1916 is a qualifying section and when accounts of a corporation are kept on a basis other than that of receipts and disbursements, it qualifies the manner of making deductions authorized in section 12(a) of the Act, and the word "paid" in the latter section is to be read "paid or accrued," depending on how the accounts of the corporation are kept.' "

The plaintiff kept its books upon the accrual system of accounting. Under the decisions of the Supreme Court where a taxpayer uses the accrual system of accounting all allowable deductions must be taken in the year in which they accrue. To permit the plaintiff a deduction for interest paid, but not accrued within the taxable year, while all other items in its return, of both income and deductions, are treated on the accrual basis would result in a distortion of its income for the year. Whatever method of accounting is used by a taxpayer, true income is clearly reflected only when all items of gross income and all deductions are treated with reasonable consistency.

The commissioner has allowed the plaintiff a deduction for all interest paid during the fiscal year ended June 30, 1917, which accrued within the year, subject to the limitation contained in section 12(a), Third. He properly disallowed the deductions for interest, paid during the year 1917, which had accrued in prior years.

The plaintiff is entitled to recover. The entry of judgment, however, will be withheld pending a computation by the parties hereto of the tax liabilities of the plaintiff and its affiliated companies for the years in question, on the basis and in accordance with this opinion and the filing of a stipulation herein of the amount of the judgment to which the plaintiff is entitled.