NATIONAL CITY LINES, Inc. v. UNITED STATES.

Civ. A. 1229.

United States District Court D. Delaware.

March 21, 1951.

284

Hugh M. Morris, of Morris, Steel, Nichols & Arsht, of Wilmington, Del., Francis X. Downey and Allan F. Ayers, Jr., of Hodges, Reavis, Pantaleoni & Downey, of New York City, for plaintiff.

William Marvel, U. S. Atty., Wilmington, Del., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Clarence J. Nickman, Special Assts. to the Atty. Gen., for defendant.

RODNEY, District Judge.

This matter in general concerns the question as to whether interest on cumulative collateral trust notes, which interest is unpaid at the time of a "flat" purchase of the notes, will, on a subsequent payment of the interest, be considered as income in the hands of the purchaser and returnable as income in a tax return or be considered as a return of a portion of the capital investment.

The matter is submitted on complaint, answer and a stipulation admitting all relevant facts.

The St. Louis Public Service Company, a corporation of Missouri, as a result of reorganization proceedings, issued in 1939 certain securities consisting of some $15,-865,000 twenty-five year convertible income bonds, and some $4,200,655 twenty-five year collateral trust notes divided into Series A to I, inclusive. The issues were respectively governed by separate trust indentures and separate trustees existed for the issues. As collateral security for the payment of the notes, there was deposited with the trustees for the issue of notes some $6,160,-950 face amount of the income bonds (be-

ing $1,466.66 for each $1,000 principal amount of the notes) and voting trust certificates representing 33,252 shares of its Class B stock.

It was expressly agreed that the obligor (St. Louis Public Service Co.) would be under no obligation to pay interest on the notes (prior to maturity of the notes) except out of the interest paid on the income bonds pledged as collateral. Any excess of interest received on the collateral bonds over and above the required interest on the notes was to be used to purchase notes on tender or call notes for redemption. All interest received on the collateral bonds, however, was first to be paid on the notes until all interest on the notes at the cumulative rate of 4% had been paid. Interest on the bonds was not cumulative and was only payable from earnings. Interest on the bonds, if earned, was payable on May 15 of each year for the preceding calendar year, and interest on the notes was payable on May 31 of each year out of the interest received on the collateral bonds by the trustee for the issue of notes.

Between December 20, 1940, and January 3, 1941, the plaintiff made three "flat" purchases[1] of the notes in various series, having a face amount of $3,801,592.77. The notes were purchased on such "flat" rate of $18 for each $100 principal amount, the purchase price amounting to $684,286.65. The expenses of the various purchases set out in the stipulation amounted to $29,671.-43. So the total cost of the notes to the taxpayer was $713,958.08.

At the time of the purchase of the notes interest had not been regularly paid, and the amount unpaid at the cumulative rate of 4% amounted to $232,322.65. On May 31, 1940, prior to the time the present plaintiff owned the notes, the trustee paid to the former holders of the notes the sum of $43,545.43.

On May 31, 1941, the trustee paid to the plaintiff the sum of $28,877.15, as interest on the notes then held by it, and on May 31, 1942, the trustee made a similar payment

1. By "flat" purchases is here meant a purchase of a security for one specified sum where the amount paid covers the title to the security as well as any additional increment connected therewith without distinction between the two.

of $223,024. Of these figures the amount of $28,877.15, and $203,445.50 of the amount of $223,024 represented interest for the period prior to the plaintiff's acquisition of the notes. These amounts of $28,877.15 and $203,445.50 were included in the gross income return of the plaintiff for the respective years 1941–1942, and resulted in an increased tax for 1941 of $8,951.92, and for 1942 of $81,378.21. It being insisted that these amounts should not have been included as income but constituted return of a portion of the capital investment, the return of this amount was demanded by the plaintiff and having been refused this suit is brought to recover such amounts.

It seems to be well established that when interest on an obligation is overdue and demandable at the time of a "flat" purchase of such obligation, such interest when later paid is treated as a return of capital investment and not as taxable income.[2]

The Government, however, in distinguishing the present case from the foregoing principle, contends that in the cited cases the interest included in the "flat" purchase was a fixed obligation, the time for the payment of which had passed at the time of purchase by the taxable. It contends that the obligation in the present case for the payment of interest on the notes was not a fixed obligation but contingent solely upon earnings of the company, and that the interest on the notes, prior to maturity, was payable solely from the interest paid on the income bonds pledged as collateral for the notes.

The rule established in the authorities heretofore cited that interest which was in arrears at the time of a flat purchase was, when subsequently paid, to be treated as a return of a portion of the investment and not as taxable income, has not been the subject of the distinction now sought to be made by the government. In every ruling which has been found or brought to my attention involving a flat purchase, including

contingent arrearages of interest at the time of purchase and subsequently paid, the rule of Hewitt v. Commissioner of Internal Revenue has been followed.

Thus in I.T. 3689 (3 C.C.H.1944, p. 8313, par. 6573) ten-year debentures were issued in 1935, bearing interest at six percent, payable semi-annually. The debentures provided, however, that until January 1, 1938, only 3% would be payable semi-annually, and the balance of the interest would be payable prior to maturity only when the Board of Directors should determine the same payable out of net earnings. The corporation accrued the interest on the debentures for 1935, 1936 and 1937. It had no earnings in 1935 out of which the interest might have been paid but did have earnings in 1936 and in subsequent years. In October, 1942, the corporation declared all interest payable in November, 1942. Prior to November, 1942, the bonds were traded in on a "flat" basis. It was ruled that a purchaser who acquired the bonds after original issue and on a flat basis should treat as a return of capital that portion of the interest which had accumulated (therein called accrued) up to the time of the purchase. It would seem that the Commissioner was only considering that portion of the interest which was contingent upon earnings and upon the action of the Directors. In any event such portion of the interest was included in his ruling.

In a special ruling of the Treasury Department (3 C.C.H.1942, p. 8146, par. 6335), the matter was also considered with reference to the interest on bonds of the Boston and Maine Railroad, issued in 1940. While the report itself does not disclose exact provisions of the bonds or indenture, yet these have been furnished to me. The bonds carried contingent interest, dependent on earnings, of 4½%. The bonds themselves and the indenture under which they were issued provided that 4% of the interest was contingent only as to time of pay-

2. Hewitt v. Commissioner, 30 B.T.A. 962; Pierce Corp. v. Commissioner of Internal Revenue, 5 Cir., 120 F.2d 206; R. O. Holton & Co. v. Commissioner of Internal Revenue, 44 B.T.A. 202; Noll v. Commissioner, 43 B.T.A. 496. In most of those cases the interest was on tax-free bonds and the taxpayer sought to regard the payments as interest and the Government insisted they were returns of capital investment.

ment, becoming an absolute obligation at maturity if not sooner paid. The remaining ½% was, however, payable only if earned and seemingly did not become an absolute obligation at maturity. No interest was paid prior to May 1, 1942. At that time provision was made to pay the interest for 1941 and that portion which had accumulated (there called accrued) from June 13, 1940, to December 31, 1940. The Treasury Department determined that when a flat purchase had been made of the bond and the increment thereon and the unpaid interest was afterwards paid, such payment of interest would be considered as a return of capital investment. No distinction was recognized between the 4% payment and the payment of the remaining ½%. See also the ruling of the Treasury Department with respect to certain Baltimore & Ohio Bonds set out in 3 C.C.H.1942, p. 8080, par. 6196.

I am of the opinion that the distinction sought to be now made by the government is not supported by any adjudication, and is contrary to the established procedure of the taxing authorities.

The government also contends that in the present case there was no interest accrued and unpaid at the time the plaintiff purchased the notes, viz., from December 20, 1940, to January 3, 1941. It reasons thus: Interest on the notes was payable May 31 of any year solely from interest paid on the collateral bonds on or before May 15 of that year. Interest on the bonds themselves was payable only from earnings of the company and was not cumulative, but was accrued on the books of the company. Thus the government contends that while interest on the bonds had accrued on December 31 of any given year, yet interest on the notes payable solely from the interest paid on the bonds could not accrue until the actual payment of such interest on the bonds on the 15th of May following. So the government reasons that the interest paid on the notes on May 31, 1940, from interest paid on the bonds on May 15, 1940, was for the calendar year 1939 and was paid to the former owner of the notes, and that interest on the notes for 1940 did not accrue until May 15, 1941, when there was

a source for their payment, and this date being subsequent to the purchase by the plaintiffs, there was no accrued interest due at the time of purchase. To the same effect is the argument as to the payment on May 31, 1942.

In considering the nature of the interest arising from the notes and with reference to its payment, the government applies the term "accrued" and then gives to such term a perfectly legal but restricted meaning of past due and presently enforceable. From this viewpoint, no interest on notes was enforceable for a given year until May 31 of the following year and after payment of the interest on the bonds on May 15. I think the interest on the notes, if not accrued or accruing in a technical sense, was deferred interest and was accumulating from time to time awaiting a source of payment. The note itself says: "All interest payments received on the twenty-five year convertible income bonds of the corporation pledged to secure this note and other notes of this series shall be applied to pay interest on this note and other notes of this series until there shall have been paid on this note and the other outstanding notes of this series a sum equal to interest at the cumulative rate of four per cent (4%) per annum on the principal amount hereof from the date hereof to the dates of payment of such interest. * * *"

To me these provisions as to the cumulative rate of 4% from the date of the instrument to the date of payment signify returns which gather volume by addition—delayed payments on account of anticipated future sources of payment which, while not payable at a definite time, yet confer upon the holder the contractual right to require payment in full out of future payments before there can be other disposition of such earnings.

The government contends that at the times of purchase there was no "accrued and unpaid interest" on the notes. Clearly there was accumulated deferred and unpaid interest, for within two years the purchaser was paid this accumulated and unpaid interest in the aggregate amount of $232,-322.65.

When the purchaser on the dates between December 20, 1940, and January 3, 1941, purchased the notes, there was included in the price paid not only the title to the securities but the right to receive interest which had accumulated and was unpaid. The whole, in my opinion, constituted a capital acquisition and the subsequent payment of the interest was a return of a portion of its investment.

An appropriate order may be submitted.