PIERCE ESTATES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26834. Promulgated May 14, 1951.

*Robert Ash, Esq.*, and *John W. Cragun, Esq.*, for the petitioner.
*Oscar L. Tyree, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* The first issue is whether certain payments by petitioner corporation represented payments of interest or of dividends. This in turn is dependent upon whether certain securities were a form of indebtedness or were stock. If the payments were interest payments they are deductible by petitioner under section 23 (b) of the Internal Revenue Code, which provides:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(b). INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except \* \* \*.

The status of hybrid corporate securities containing characteristics of both stock and indebtedness has frequently been before this Court. No one factor is sufficient for a determination of such status but all of the attributes must be carefully weighed and each case will turn on its own facts.

Some of the characteristics which are considered are: The maturity date if any, the method used in accounting for the securities on the books, the designation of the security, the ratio of these securities to capital stock, the interest rate, subordination of interest payments, specified designation of the source of the interest payments, right of action by the holder in case of default, voting rights, and consideration.

While nomenclature is not controlling in this type of case, it has some evidentiary value. *Richmond, Fredericksburg & Potomac Railroad Co.*, 33 B. T. A. 895 (1936), affd. (C. A. 4, 1937), 90 F. 2d 971. The securities issued by petitioner were denominated 30-year cumulative income debenture notes. They had a definite maturity date in the reasonable future, an important characteristic of an evidence of indebtedness. *Kelley Co.* v. *Commissioner*, 326 U. S. 521 (1946);

*Swoby Corporation*, 9 T. C. 887 (1947). They were carried on the books as a liability, being the first item which appeared on the liability side of petitioner's profit and loss statements.

The book value of petitioner's outstanding no-par stock was nearly $600,000 for the period 1930 until 1941, from which time it was over $200,000 following a write-down in connection with adjustments of the capital accounts. The notes had a face value of $150,000. The ratio of the two was not of such a character as to make it appear that in reality the notes indicated an investment in the corporation. *Swoby Corporation, supra.*

The notes provided for 6 per cent cumulative interest payable out of the net income of the corporation. Such net income was defined in the note itself as being any amount remaining after current expenses, taxes, interest (other than on the notes), repairs, and depreciation reserves had been set aside by the Board of Directors. Such a condition for payment is not unusual and, while it is more like a stock characteristic, has been present in cases where the security has been held to represent an indebtedness, *Kelley Co.* v. *Commissioner, supra,* although it is a factor which weighs against such result.

Since the notes were silent as to rights of the holder in case of default, there was no limitation on those rights which are available to any creditor upon default of a legal obligation. Cf. *Mullin Building Corporation,* 9 T. C. 350, 356 (1947), affd. (C. A. 3, 1948), 167 F. 2d 1001.

These securities were part of the consideration given to the stockholders of petitioner in exchange for assets transferred by the stockholders to the corporation. Notes rather than capital stock were given since one of the stockholders (the trustees of the estate of a deceased son) wanted a definite date for return of the principal.

Some of these factors point in one direction, others in the opposite direction. Having carefully considered all the enumerated characteristics plus others which have not been set forth, we hold that the income debenture notes evidenced indebtedness, and that interest paid thereon is deductible under section 23 (b) of the Code.

Having determined that interest paid on the notes is properly deductible for income tax purposes, we must determine how much petitioner may deduct. Petitioner is on an accrual basis. For the taxable year in question it deducted $65,156.94, which represented payment of interest on the debenture notes including back interest which had not been paid in prior years. The theory petitioner advances for such treatment is that the interest did not accrue until such time as petitioner made the income with which to pay it. The respondent, on the other hand, argues that since petitioner is on an accrual basis, the interest accrued yearly and should have been claimed as a deduction

each year. We uphold the respondent on this question. While it is true that until such time as petitioner showed a net income for any year the interest would not be payable, all steps necessary to determine liability arose in each year that the notes were outstanding and it was merely the time of payment which was postponed.

In *Miller & Vidor Lumber Co.* v. *Commissioner* (C. A. 5, 1930), 39 F. 2d 890, affirming 15 B. T. A. 948 (1929), certiorari denied, 282 U. S. 864 (1930), the court said:

> In this case the petitioner kept its books and made its returns on the accrual basis, which reflected true income. The interest on the notes was a fixed liability of a definite amount, ascertainable at the end of each year. While the interest was not paid annually, and was not due annually, it was earned annually. Each year's interest was ratably earned by the use of the principal sum in the business of the taxpayer during the year of its use. It was an expense of creating the income for each separate year, and the net income of the business for a particular year could be ascertained only by deducting from gross income the item of annual interest. The year of the payment of the interest and the year when the interest matured have no importance, where the accounting is on the accrual basis. Scientific accounting requires the deduction to be made from the gross income, which the item of expense helped to create, and that requires the deduction for annual interest to be made from the gross income of the year in which the principal served to create it.

In *Warner Co.*, 11 T. C. 419 (1948), affd. (C. A. 3, 1950), 181 F. 2d 599, petitioner kept its books on an accrual basis. In that case the original bond indenture called for 6·per cent annual interest payments. During the depression petitioner suffered losses and was unable to pay such interest as it became due. It therefore executed a supplemental indenture with the bondholders, providing that for the years 1933 through 1935, interest not to exceed 6 per cent be paid only to the extent that there were sufficient earnings. Any deficiency in such interest was to be paid at maturity or any earlier redemption. No interest was paid for these years until 1942, when it was all paid and a deduction for the entire amount was claimed for that year. We held that since petitioner was on an accrual basis it was not entitled to such a deduction in the year the interest was paid. Such interest was accruable in the years it became due and the supplemental indenture merely extended the time for payment, but did not alter or postpone the unconditional liability to pay the interest. See also, *American National Co.* v. *United States*, 274 U. S. 99 (1927); *United States* v. *Anderson*, 269 U. S. 422 (1926); *Keebey's Inc.* v. *Paschal* (C. A. 8, 1951), 188 F. 2d 113; *Cumberland Glass Mfg. Co.* v. *United States* (Ct. Cl., 1930), 44 F. 2d 455; *National City Lines, Inc.* v. *United States* (D. C., Del., 1951), 97 F. Supp. 283.

In the instant case, it is true that the time of payment was uncertain. But that did not prevent the interest from accruing. The amount was fixed and definite. The contingency as to time of pay-

ment was not such a contingency as to prevent the interest from accruing. Cf. I. T. 3635, 1944 C. B. 101. The payment of the interest was not so uncertain as to prevent its accrual annually. Cf. *Millar Brainard*, 7 T. C. 1180 (1946). Under such circumstances, the interest was properly accruable annually, and petitioner is entitled to a $9,000 deduction, representing that interest which accrued during the taxable year.

The second issue is whether certain expenditures made by petitioner during the taxable year were for repairs deductible under section 23 (a) (1) (A). Whether such an expenditure is deductible as a repair is a question of fact. Treasury Regulations 111 § 293.23 (a)-4 distinguishes between a repair and a capital expenditure as follows:

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept. * * *

Applying such considerations to the instant case, we hold that the $300 spent to patch the asphalt roof and the $513 spent to repair the railroad siding are properly deductible as repair expenses. Neither expenditure prolonged the life of the asset, nor materially increased its value. Each was made to restore the asset to a useful state. *Illinois Merchants Trust Co., Executor*, 4 B. T. A. 103 (1926).

The corrugated metal roof is another matter. It was a replacement with a life of more than one year, and the cost thereof is not properly deductible as an ordinary and necessary expense but should be treated as a capital expenditure. *Georgia Car & Locomotive Co.*, 2 B. T. A. 986 (1925).

*Decision will be entered under Rule 50.*