SABINE ROYALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25149. Promulgated December 29, 1951.

*Frank B. Appleman, Esq.,* and *Harry C. Weeks, Esq.,* for the petitioner.

*Allen T. Akin, Esq.,* for the respondent.

## OPINION.

### *Issue 1.*

JOHNSON, *Judge:* Petitioner claims that payments to income debenture holders were, in fact, interest payments and deductible under section 23 (b), Internal Revenue Code. Respondent has determined that these amounts were paid as dividends, and has therefore disallowed the interest deductions.

A number of criteria must be taken into consideration before determining whether a certain security is in fact a form of capital stock or evidence of indebtedness. *John Kelley Co.*, 1 T. C. 457, 462, affd. 326 U. S. 521; *New England Lime Co.*, 13 T. C. 799. No single factor is necessarily controlling for the Court usually considers each of the following factors alone, and also as a concomitant of the others; the name given to the security, maturity date, source of payment, certainty of payment, status of the security holder as compared to other creditors, interest of the holder in management, intent of the parties, and business purpose.

The securities in question were always called and always recorded as "Income Debentures," requiring the payment of interest. Interest was payable annually at the rate of 8 per cent and was cumulative. Petitioner assumed a definite obligation to pay the matured claims of the debenture holders, and payment was not discretionary even though "secondary and subordinate" to other bonds and accounts. The debentures mature on July 1, 1968, and are unqualifiedly due at that time. Cf. *Charles L. Huisking & Co.*, 4 T. C. 595, 600.

The intent of the parties to remove an element of proprietorship was evidenced by the initial reduction of capital stock after the exchange. Cf. *Lansing Community Hotel Corporation*, 14 T. C. 183, affd. 187 F. 2d 487. This intent is further substantiated by the fact that the participating shareholders relinquished their voting power, a proprietary interest, in exchange for a promise of petitioner corporation to pay a sum certain on July 1, 1968. Together both of these considerations support the theory of indebtedness. Cf. *John Kelley Co., supra; Talbot Mills* v. *Commissioner*, 326 U. S. 521, affd. 3 T. C. 95; I. T. 3095, 1937-2 C. B. 217.

The fact that ultimate payment to the debenture holders was "secondary and subordinate" to other creditors is evidence of a stockholder relationship. However, this is not fatal to the holders' status as

creditors. *Elliott-Lewis Co.* v. *Commissioner*, 154 F. 2d 292; *John Kelley Co., supra; Clyde Bacon, Inc.*, 4 T. C. 1107. In further support of the creditor relationship is the fact that the maturity claim of the debenture holders is absolved from risks and hazards of the business, except those risks incident to ordinary creditors. Interest payable "out of income exceeding expenses" does not in itself support the creditor relationship, but when coupled with the words "cumulative" and "unpaid interest * * * will be payable," the creditor relationship is fortified. Cf. *Pierce Estates, Inc.*, 16 T. C. 1020; *Lansing Community Hotel Corporation, supra; New England Lime Co., supra.*

In support of the theory of proprietorship, respondent points out "that the debentures were not issued for borrowed money" and did not "represent any new contributions to the capital." We did not recognize this argument as determinative in the *Lansing Community Hotel Corporation* case, and repeat it here. Respondent also alleges that the change from the stock to debentures was effectuated solely as a tax avoidance scheme. The evidence indicates that the change was made to satisfy the demands of some shareholders for an interest other than stock, and to effect small administrative economies. Here, as in the *New England Lime Co.* case, "The parties recognized that the shift would help the petitioner taxwise, but that is not sufficient reason for denying the deductions claimed." Cf. *Toledo Blade Co.*, 11 T. C. 1079.

The amounts paid and claimed by petitioner are held to be interest on the income debentures and are deductible under section 23 (b), I. R. C. Since the respondent raises no question about the amounts claimed as deductions for the years in question, his disallowance of same is reversed.

### Issue 2.

The issue before us is: What is the allowable depletion deduction for petitioner's royalty interests for the years before us? The allowable depletion deduction is dependent upon the basis of petitioner's oil properties during the years 1943 to 1947. The basis as determined by petitioner is correct if, as it contends, percentage depletion is the allowable depletion for the years 1933 through 1939. On the other hand, respondent is to be sustained if, as he contends, cost depletion is the allowable depletion for the same years.

As shown in our findings, the petitioner took percentage depletion deductions on its royalty interests for the years 1933 through 1941. In 1941, during conferences with respondent concerning 1940 and 1941 deficiencies, it was suggested that the cost depletion might result in greater deductions for petitioner than percentage depletion. Subsequently, petitioner voluntarily submitted cost depletion schedules for the years 1933 through 1941; the years prior to 1940 were then

barred by the statute of limitations. Respondent revised petitioner's schedules, and on the basis of the revised schedules for the years 1933 through 1941 petitioner received a substantial refund for the years 1940, 1941, and also 1942. Petitioner now claims that the percentage depletion deduction taken in the years 1933 through 1939 should have been used to reduce the cost basis in its properties, and urges us to hold percentage depletion as the allowable depletion for those years. Petitioner's present position is incongruous with its prior position. It was sufficiently satisfied with the depletion deductions in the 1944 cost depletion schedules to utilize these deductions and cost bases in the amended returns for 1940 to 1942, and other returns for 1943 through 1946.

In 1947 petitioner added to the 1947 cost basis the difference between percentage depletion and greater cost depletion for the years 1933 through 1939. Petitioner cites no authority for this increase to the cost basis; nor can we find any authority for such an increase. This addition provided an increased cost basis, and it made possible an increased cost depletion deduction which was not, in fact, the depletion actually sustained in 1947. The revised cost depletion schedules, which were agreed to by petitioner and respondent, were prepared on the principle that cost depletion, being greater than percentage depletion, was the depletion sustained for the years 1933 through 1941. The effect of adding the difference between the percentage depletion deduction and cost depletion deduction would be to allow petitioner to benefit, in 1947, from a depletion which was sustained in the years 1933 through 1939. In the light of the well established rule that depletion must be taken in the year sustained, petitioner has erroneously computed its 1947 depletion deduction. Section 23 (n), I. R. C.; *United States* v. *Ludey*, 274 U. S. 295. Cf. *Virginian Hotel Corporation of Lynchburg* v. *Helvering*, 319 U. S. 523, reversing 132 F. 2d 909.

In its petition, petitioner abandoned the method originally used in reporting the deduction for the 1947 cost depletion. Now petitioner suggests that the difference between the percentage depletion deduction and the greater cost depletion deduction for the years 1933 through 1939 be added to the 1943 cost basis of its royalty interests. In doing this, petitioner, for 1943 and each subsequent year, increases its cost basis and thus concomitantly increases the corresponding deduction for cost depletion. Cf. Regulations 111, section 29.23 (m)-2. By using this increased basis petitioner again erroneously computed the cost depletion deductions; for, as we said above, depletion must be taken in the years sustained. Again, the amount petitioner seeks to add to its cost basis in 1943 represents depletion sustained in the years 1933 through 1939.

Petitioner's rationale for increasing the basis of its royalty interests is that the deductions for percentage depletion reported for the years 1933 through 1939 represented the allowable depletion. Petitioner now rationalizes that the respondent improperly revised the cost depletion schedules in 1944 because at the time of adjustment some of the adjusted years were barred by the statute of limitations.

Petitioner's contention is not well founded. In 1944 petitioner agreed to its own cost depletion schedules as revised by respondent. Even though these depletion schedules encompassed the years 1933 through 1939, petitioner used the schedules to its own advantage in its amended returns for 1940, 1941, and 1942. It did not then complain that the years 1933 through 1939 were barred by the statute of limitations; we think that its failure to do so, and its acceptance of tax benefits on the basis of the revised depletion schedules, precludes any change of position now. We shall not go behind these schedules; nor shall we now increase the cost basis of petitioner's properties. Therefore, the allowable depletion deductions for petitioner shall be as determined by the respondent for the years 1943 through 1947.

Reviewed by the Court.

*Decision will be entered under Rule 50.*