**In the Matter of TEXLON CORPORATION, Debtor.**

**Bankruptcy No. 74 B 1554 (PBA).**

United States Bankruptcy Court, S.D. New York.

March 22, 1983.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for trustee; Douglas Pick, New York City, of counsel.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for I.R.S., Alan Nisselson, New York City, of counsel.

## DECISION AND ORDER ON TRUSTEE'S MOTION TO EXPUNGE THE AMENDED PROOF OF CLAIM FILED BY THE INTERNAL REVENUE SERVICE

PRUDENCE B. ABRAM, Bankruptcy Judge:

This matter comes before the court pursuant to a notice of motion dated July 8, 1982, by William N. Otte, the trustee in bankruptcy of Texlon Corporation ("Texlon"), objecting to an amended proof of claim filed by the Internal Revenue Service ("IRS") in the sum of $326,969.25 and seeking to have the IRS claim reduced to $180,895.65. Subsequently, at the trial held on November 1, 1982, the trustee amended his request and sought to have that portion of the IRS claim for corporate income taxes expunged in its entirety.

Texlon was engaged in the business of texturizing and selling synthetic yarn. On November 1, 1974 Texlon filed a petition for arrangement pursuant to Chapter XI of the Bankruptcy Act. Approximately two months later Texlon ceased operations. On January 9, 1975, Texlon was adjudicated a bankrupt and thereafter the trustee was appointed and duly qualified.

On July 8, 1975, the IRS filed a proof of claim against Texlon in the amount of $570,019.37. Approximately three years later the IRS, agreeing that Texlon was entitled to a loss carryback for the fiscal year ending March 31, 1975, filed an amended proof of claim in the amount of $326,969.65. Of this total, $322,085.60 is for corporate income tax, $937.85 for federal unemployment tax and $3,946.10 for withholding and FICA.

The issue for determination by the court is whether the depreciation claimed by Texlon for machinery and equipment for the fiscal years ending March 31, 1971, 1972 and 1973 was proper. If it was, the trustee is entitled to have the IRS claim for corporate income taxes expunged.

Texlon depreciated its machinery and equipment on the basis of an eight-year useful life. The IRS has disputed the useful life figure and has assessed a deficiency on the basis of a 20-year useful life.

In determining whether Texlon is entitled to the depreciation deductions claimed on its returns for the years in question, this court must necessarily begin with Section 167(a) of the Internal Revenue Code ("IRC") which provides:

"(a) General Rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business * * * "

In computing a reasonable allowance for depreciation deduction, the taxpayer must take into account the cost or other basis of the property, the useful life of the property, and the remaining salvage value, if any, of the asset. The purpose in allowing the taxpayer to have an annual deduction for depreciation of property used in trade or business or held for the production of income "is to permit a taxpayer to recover, by

deductions against his income, his cost or investment in any depreciable asset." *In re Macabe Co.,* 42 T.C. 1105, 1109 (1964). See also *United States v. Ludey,* 274 U.S. 295, 301, 47 S.Ct. 608, 610, 71 L.Ed. 1054, 1058 (1927).

In *United States v. Ludey, supra,* the Supreme Court characterized depreciation as a reduction in capital assets through wear and tear. 274 U.S. at 300, 47 S.Ct. at 610. In *Detroit Edison Co. v. Commissioner,* 319 U.S. 98, 101, 63 S.Ct. 902, 904, 87 L.Ed. 1286, 1288 (1943) the Supreme Court, in discussing depreciation, stated "[t]he end and purpose of it all is to approximate and reflect the financial consequences to the taxpayer of the subtle effects of time and use on the value of his capital assets." In 1960, the Supreme Court in *Massey Motors, Inc. v. United States,* 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592, and *Hertz Corp. v. United States,* 364 U.S. 122, 80 S.Ct. 1420, 4 L.Ed.2d 1603, companion cases involving the depreciation allowance for cars and trucks used in a rental business, concluded that the reasonable allowance for depreciation was "to be calculated over the estimated useful life of the asset while actually employed by the taxpayer, applying a depreciation base of the cost of the property to the taxpayer less its resale value at the estimated time of disposal." 364 U.S. at 93, 80 S.Ct. at 1413. *See United States v. S & A Co.,* 338 F.2d 629, 633–34 (8th Cir.1964), *cert. denied* 383 U.S. 942, 86 S.Ct. 1194, 16 L.Ed.2d 206 (1966).

The Treasury Regulations provide:

"The [depreciation] allowance is that amount which should be set aside for the taxable year in accordance with the reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property.   * * * "   Treas.Reg. 1.167(a)–1(a) (1972).

"For the purpose of section 167 [of the Internal Revenue Code] the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income."   Treas.Reg. § 1.167(a)–1(b) (1972).[1]

There has been no dispute raised in this case as to two of the three elements that go into a calculation of depreciation—the taxpayer's basis in the equipment and the salvage value of the equipment. The entire dispute is as to the third variable of the depreciation equation, "useful life."

■ Useful life is an estimate made at the time the asset is first put into use. *Cohn v. United States,* 259 F.2d 371, 377 (6th Cir.1958). The Treasury Regulations list certain factors to be considered in determining a useful life for a specific asset. These factors include:

"(1) Wear and tear and decay or decline from natural causes,

(2) The normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business,

(3) The climate and other local conditions peculiar to the taxpayer's trade or business, and

(4) The taxpayer's policy as to repairs, renewals, and replacements."

Treas.Reg. § 1.167(a)–1(b) (1972). This list of factors is not exclusive, but merely serves as a guideline.

A taxpayer can use either of two methods in determining the useful life of assets: first, the taxpayer can rely on the facts and circumstances applicable to those particular assets, or secondly, the taxpayer can follow published IRS guidelines relating to partic-

1. *See generally* Comment, *DETERMINATION OF THE USEFUL LIFE OF A TAXPAYER'S ASSET FOR PURPOSES OF THE FEDERAL INCOME TAX DEDUCTION FOR DEPRECIATION USING STATISTICAL METHODS TO ANALYZE THE FACTS AND CIRCUMSTANCES,* 21 Vill.L.Rev. 674 (1975--1976) (hereinafter cited as "Determination of Useful Life").

ular classes of assets, known as the Class Life Asset Depreciation Range System. Treas.Reg. § 1.167(a)–11(a), 12(a). *See, generally, Determination of Useful Life.* The IRS guidelines contain two systems: the Class Life System ("CLS") and the Asset Depreciation Range ("ADR"). The ADR applies to property placed in service after December 31, 1970, and the CLS guidelines apply to property placed in service before January 1, 1971. These systems were designed to reduce disputes between taxpayers and the IRS by prescribing a useful life for classes of assets. The systems are optional and a taxpayer is allowed an election each year.

The CLS and the ADR are not the only useful life guidelines which have been published by the IRS. In 1942 the IRS issued what was known as Bulletin "F". Bulletin "F" was replaced by Rev.Proc. 62–21. This Revenue Procedure categorized assets according to industry, and provided useful lives for broad classes of assets. Rev.Proc. 62–21, 1962–2 C.B. 418. The useful life guideline system was basically a codification of Rev.Proc. 62–21. *Tax Management Portfolio* No. 195 (1973). The ADR system and tables are outlined in Rev.Proc. 72–10.

If a taxpayer elects not to use the ADR or CLS system, he can use the facts and circumstances method. In making this determination the taxpayer will take into account the factors set forth earlier (i.e. wear and tear, technological progress, etc.), as well as his experience with similar property taking into account present conditions and probable future developments. For example, in *Massey Motor, supra,* the taxpayer was a car dealership. It was the taxpayer's policy to sell the cars after approximately 15 months. At the time of sale the cars were in good condition, and the taxpayer could have used them for a longer period but customer demand required the taxpayer to sell the older model cars and acquire the late model styles. The court concluded that the useful life of the cars were not their full economic life, but rather Congress intended that "the useful life of the asset be expected to be employed in the taxpayer's business." 364 U.S. at 107, 80

S.Ct. at 1419. The Treasury Regulations provide that if a taxpayer's own experience with the machinery or equipment in question is inadequate to allow him to make an estimate of the useful life, the taxpayer may rely on general standards or experience in the industry. Treas.Reg. § 1.167(a)–1(b) (1972).

■ Before turning to the merits of the controversy it is necessary to discuss the burden of proof. Here the deficiency was not assessed by the IRS until after Texlon was adjudicated a bankrupt. A proof of claim is prima facie evidence of the validity and amount of the claim and the burden is on the trustee to rebut the prima facie effect of the claim. If the trustee offers sufficient evidence to rebut the claimant's prima facie case, the burden then shifts to the claimant to prove the amount and validity of his claim. 3 *Collier on Bankruptcy* ¶ 57.13 at 224–28 (14th ed.). It is well established in a non-bankruptcy context that deficiency determinations made by the IRS are presumptively correct, and the taxpayer bears the burden of proving that the determination is erroneous. *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623, 629 (1935); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212, 215 (1933); *DeLorenzo v. United States,* 555 F.2d 27, 29 (2d Cir.1977); *Silverman v. CIR,* 538 F.2d 927, 930 (2d Cir.1976), *cert. denied* 431 U.S. 938, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977). If the taxpayer sustains his burden in showing that the deficiency is erroneous, the burden then shifts to the IRS to prove the correct amount of tax owed. *Helvering v. Taylor, supra, Silverman v. CIR, supra, Cohen v. CIR,* 266 F.2d 5, 11 (9th Cir.1959). Here, the deficiency was not assessed until after adjudication and is thus subject to this court's review in connection with the objection to claim. See Bankruptcy Act § 2a(2A) and 1 *Collier on Bankruptcy* ¶ 2.22A at 218–221 (14th ed.).

Section 1.167(b)–0(a) of the Income Tax Regulations provides:

"The reasonableness of any claim for depreciation shall be determined upon the

basis of conditions known to exist at the end of the period for which the return is made. It is the responsibility of the taxpayer to establish the reasonableness of the deduction for depreciation claimed. *Generally, depreciation deductions so claimed will be changed [by the IRS] only where there is a clear and convincing basis for a change."* (Emphasis added).

This standard enunciated in 1956 was apparently intended to reflect the IRS' policy with respect to depreciation adjustments. *Southern Pacific Transportation Co. v. Commr.,* 75 T.C. 497, 692 (1980). Further understanding of the policy can be gained by reference to Rev.Rule 90, 1953–1 C.B. 43 issued in 1953 which announced the IRS' policy with respect to depreciation adjustments. That ruling stated:

> "it shall be the policy of the Service generally not to disturb depreciation deductions, and revenue employees shall propose adjustments in depreciation deduction only where there is a clear and convincing basis for a change. This policy shall be applied to give effect to its principal purpose of reducing controversies with respect to depreciation."

This ruling was followed by Rev.Rul. 91, 1953–1 C.B. 44 which announced instructions relating to the policy with respect to depreciation adjustments. Revenue Ruling 91 provides in part:

> "2. Among the factors which should be given careful consideration in order to give full force and effect to the announced policy are the following:
>
> (a) Whether depreciation rates used by the taxpayer are fair and reasonable under the circumstances;
>
> (b) Whether the taxpayer has followed a consistent practice in arriving at the amount of depreciation deductions;

> (c) Whether in considering all factors, including reasonable tolerances, any adjustments proposed are substantial.
>
> 3. In the establishment of the depreciation rates for a taxpayer, careful consideration shall be given to facts and arguments presented by the taxpayer with respect to obsolescence, as well as to the repair and maintenance policy of the taxpayer."

■ For the reasons which will be set forth below, this court concludes that the IRS did not have a "clear and convincing basis" to adjust the depreciation claimed and accordingly that the trustee is entitled to have the IRS claim expunged for corporate taxes. This court has taken note in considering the evidence of the fact that this objection was not brought on until some six years after the deficiency assessment was made. While the witness for the IRS, whose testimony is discussed below, had little present recollection of making the report on which the deficiency adjustment is based, this court is of the opinion that the passage of time cannot serve to validate an act that was unreasonable at the time it was taken and which was taken after the adjudication in bankruptcy.

The IRS offered the testimony of Alphons Fraenkel from the IRS Engineering and Valuation Branch.[2] Mr. Fraenkel is a registered professional engineer and he prepared the report (Government Ex. A) on which the readjustment of the depreciation was based. Mr. Fraenkel adjusted the useful life from 8 years to 20 years. Mr. Fraenkel testified that in his 8 years employment with the Engineering and Valuation Branch he had made approximately 300–400 depreciation determinations of which approximately six were with companies in the textile field and none of which were in the texturizing field.[3] Mr. Fraenk-

---

**2.** These engineers are employees of the IRS Engineering and Valuation Branch. Their function is to render technical assistance to revenue agents. An engineer is consulted only upon the IRS' request. A taxpayer cannot have his case reviewed by the IRS engineer unless the revenue agent examining that taxpayer's return agrees. The findings of the engineers are not conclusive but their testimony is given considerable weight. *DETERMINATION OF USEFUL LIFE,* 21 Vill.L.Rev. at 677.

**3.** The court assumes that Mr. Fraenkel was speaking of experience at the time he testified. If that is the case, at the time of the Texlon audit he would have had been with the IRS only two years.

el did not examine Texlon's machinery and equipment. Mr. Fraenkel's experience with machinery in this field, and the Texlon machinery specifically, is very limited. For example, although Mr. Fraenkel was generally familiar with what the Texlon machinery did, he also stated that, with minor exceptions, he would not be able to recognize the various types of machinery.

When asked on cross-examination, Mr. Fraenkel stated that the bases for his depreciation adjustment as follows:

"The basis for the determination is several: one is the life of the equipment that is being used by the taxpayer, that is, from what I could see what was the taxpayer's policies is retaining or replacing equipment.

"It was also based on the guidelines issued by the Internal Revenue, specifically Revenue Procedure 70210 [sic] and, also, my generalized experience in the industry with textile machinery." Transcript at 43–44.

"Well, the absence of any corporation from [sic] cooperation from the taxpayer's representatives, or any help from him, I really had at that time no idea of the type of machinery, what they were, how they were used and what was the taxpayer's rationale for eight years.

"I then followed what is basically standard procedure for the IRS: we work with the information available to us and I took the most conservative, reasonable, approach. That is why I picked the twenty year life." Transcript at 59.

The key portion of Mr. Fraenkel's report dated August 13, 1975 is as follows:

"*Engineer's Position*

The taxpayer depreciates his machinery over 8 years. The engineer considers this life span too short for the following reasons:

1. Manufacturers of various types of textile machinery indicate lives from 20 to 30 years.
2. Bulletin "F" lives vary from 15 to 30 years.
3. The guidelines life for textile M & E is 14 years (Asset Guideline Class 22.2). IRS Publication 456 dated July, 1962 states that the guidelines lives average 30 to 40 percent shorter than industry lives. In the absence of enough data to perform a morality study, the life on the taxpayer's M & E is determined by dividing the guideline life of 14 years by 0.7, resulting in 20 years.

It is therefore recommended that a life of 20 years be assigned to the M & E assets." Government Ex. A.

Mr. Fraenkel did not state in his report or his testimony a single affirmative piece of information he obtained from or about Texlon or its machinery as the basis for his change in the useful life.

Mr. Fraenkel testified that a taxpayer would need a "two-cycle period" to gain sufficient experience to be able to make a useful life determination. This means that since the claimed useful life was eight years, Texlon would have needed 16 years to gain the proper experience, although it was in business for only eleven years.

The trustee called Marvin W. Ticker, former vice-president of Texlon, as a witness. Mr. Ticker was employed by Texlon from its inception until it ceased operations approximately eleven years later. He was in charge of the Danville, New Jersey plant facility at which the depreciated machinery and equipment was located, and was familiar with the machinery and equipment. Mr. Ticker was a member of the board of directors of the Association of Synthetic Yarn Manufacturers, a trade association of synthetic yarn manufacturers. This trade association, which is comprised of textile companies in the United States, who had regular meetings to discuss market trends, technological changes, and the general state of the industry.

Mr. Ticker stated that it was the practice in the texturizing industry to depreciate machinery and equipment of the type at issue on an eight-year useful life. While Mr. Ticker's information as to the practices of other entities was not based on a review of tax returns, this court is entitled to con-

sider it as some evidence of the reasonableness of Texlon's useful life selection. The Treasury Regulations provide that if a taxpayer's experience is inadequate he can rely on the general industry experience in estimating useful life. Treas.Reg. § 1.167(a)–1(b) (1972).

Mr. Ticker testified without contradiction that the texturizing industry experienced rapid technological advances during the relevant period. This, coupled with changes in the clothing industry, primarily a drop in interest in doubleknit men's wear, meant that in order for Texlon to be able to compete in the industry it had to upgrade existing machines, or purchase new ones. These factors and circumstances are properly taken into account in estimating useful life. *See Massey Motors, Inc. v. United States, supra;* Treas.Reg. § 1.167(a)–1(b) (1972); Rev.Rul. 91, 1953–1 C.B. 44. None of the testimony as to the state of the industry or the rapid technological changes was refuted.

The major equipment used by Texlon in the few years before its demise was 8 ARCT 480's. These machines were purchased in 1971 for $850,000, and were sold in 1975 after the adjudication for less than half that amount.[4] Mr. Ticker identified various machinery that had not been used for a number of years by Texlon. He discussed at length Texlon's replacement policy, which was to constantly upgrade and replace equipment to keep pace with rapid technological changes in an industry that only began in the early 1960's. At one point Mr. Ticker indicated that in his view a 4-year useful life would have been more appropriate than an 8-year one utilized by Texlon. Although Texlon had equipment that was 8 or 9 years old, that equipment was either not in use or of little value. Mr. Ticker stated that Texlon kept outdated equipment because it could not be sold.

This court is entitled to give considerable weight to Mr. Ticker's testimony. *See The*

*Winter Garden, Inc. v. CIR,* 10 B.T.A. 71 (1928) (the opinion of corporate officers possessing knowledge and experience with the items in question as to the value of depreciated property is entitled to considerable weight); *Cumberland Glass Mfg. Co. v. United States,* 44 F.2d 455, 460 (Ct.Cl.1930) (the opinions and experience of corporate officers are preferred to blanket applications of pre-determined formulas). *Cf., S.S. Gallagher Warehousing Corp.,* 24 CCH Tax Ct.Mem. 38, 45 (1965) (where no question has been raised concerning the qualification of the engineers, the appraisal methods or the accuracy of the data, the report is entitled to considerable weight as the opinion of a qualified appraiser).

Considering all the evidence the court concludes that the IRS did not have a "clear and convincing basis" for adjusting the depreciation claimed by Texlon. Mr. Fraenkel did not make his recommendation on the basis of obtaining information warranting a change, but rather on the basis of failing to receive evidence in support of the depreciation claimed. That missing evidence has been supplied by Mr. Ticker's testimony. While this court cannot condone any failure that may have occurred on the part of the trustee to supply requested information to the IRS, likewise this court cannot permit the IRS to penalize this estate and its creditors by an arbitrary post-adjudication assessment. There can be no question but that texturizing machinery did not have a useful life of twenty years during the period in question, although that may be an accurate measure of its physical life. This is not a case where the taxpayer has offered no evidence as to the useful life of the property. *See Ralph E. Schumaker,* 29 CCH Tax Ct.Mem. 1315, 1317 (1970), *aff'd* 451 F.2d 1349 (6th Cir.1972). Likewise, this is not a situation wherein neither party offered evidence so as to award judgment to the IRS based on a presumption of correctness. *See Easter v. CIR,* 338 F.2d 968 (4th Cir.1964) *cert. denied* 381 U.S. 912, 85

---

**4.** This testimony tends to establish the reasonableness of the depreciation claimed since it shows that over a four-year period the machinery lost half its value. While sales price prior to the end of a useful life period is not dispositive, it can be useful confirmatory evidence in a case such as this.

**532**

S.Ct. 1532, 14 L.Ed.2d 433 (1965); *Imeson v. Comm.,* 487 F.2d 319 (9th Cir.1973) *cert. denied* 417 U.S. 917, 94 S.Ct. 2621, 41 L.Ed.2d 222 (1974). The IRS' adjustment of Texlon's determination and corresponding change to a 20-year useful life are unsupported by the facts, *see Vegetable Farms v. CIR,* 191 F.2d 677 (9th Cir.1951).

The amended claim filed by the IRS will accordingly be reduced to $4,883.95 and allowed as a priority claim in that amount.

IT IS SO ORDERED.