**In re Frank Eugene WELLS and Sharon Jean Wells, Debtors.**

**Bankruptcy No. 83 B 5756 G.**

United States District Court, D. Colorado.

July 16, 1985.

---

John A. Berman, Denver, Colo., for debtors.

Younge & Hollingsworth by C.P. Hollingsworth, Grand Junction, Colo., for IntraWest Bank of Grand Junction.

## ORDER

JAY L. GUECK, Bankruptcy Judge.

### INTRODUCTION

THIS MATTER is before the Court on the Standing Chapter 13 Trustee's Motion to Disallow Certain Claims. After notice, the holder of Claim No. 25, IntraWest Bank of Grand Junction (IntraWest), objected to the disallowance of its claim. A hearing was held November 8, 1984.

Briefly, the claim of IntraWest is based on four promissory notes. The maker of two of the notes was Frank Eugene Wells

(Wells), one of the debtors herein. The notes evidenced an obligation to the Bank in the total amount of $20,921.90. These two notes were unsecured. The maker of the two remaining notes was the United Consumers Club of Grand Junction (United Consumers). Wells was president and majority stockholder of United Consumers. The United Consumers' notes were secured by the office equipment, furniture and accounts receivable of that company, as well as Wells' personal guarantee.

The debtors' Second Amended Chapter 13 Plan provided that the debtors would surrender the collateral securing the IntraWest obligation. The debtors believed the United Consumers' collateral would fully satisfy all obligations to IntraWest. While the Plan provided that general unsecured obligations would share pro-rata the sum of $14,306.00, IntraWest was not scheduled as having an unsecured claim.

On January 26, 1984, IntraWest filed its proof of claim. It was assigned Claim No. 25 and claimed an unsecured debt of $41,-614.31. The IntraWest proof of claim acknowledged that the Bank had a security interest in collateral belonging to a co-debtor. That co-debtor was apparently United Consumers.

The Standing Chapter 13 Trustee filed her Motion to Disallow Certain Claims on August 3, 1984. The basis of the objection to Claim No. 25 was that IntraWest was to be fully paid by the return of the collateral. Prior to the hearing, the parties stipulated that the promissory notes, of which Wells was the maker, represented valid unsecured claims against the estate. The Trustee, however, continued her objection to the allowance of an unsecured claim based on Wells' guarantee of the United Consumers' obligation.

### FINDINGS OF FACT

The evidence presented concerning the United Consumers' obligations and the disposition of the collateral securing those obligations was inconclusive in many respects. The following is a summary of the evidence presented.

The two United Consumers' promissory notes were introduced into evidence. David Zollner, a representative of the Bank, testified the principal balance on the first note was $5,713.15; together with approximately $500 of pre-petition interest. The principal balance on the second note was $8,335.38, plus $606.00 for pre-petition interest.

Mr. Zollner testified the exact amount of pre-petition interest on the first note could be calculated by applying the per diem rate of $2.30 for the period September 21, 1983 to the date of the petition, December 22, 1983. By the Court's calculation, the pre-petition interest on the first note was $211.60. Based on the foregoing, the Court finds that the total obligation on the two United Consumers' notes to be $14,-866.03 on the date of the filing of the petition.

The major dispute in this case centers on IntraWest's disposition of the collateral securing the United Consumers' obligations. Mr. Zollner admits that he has no personal knowledge of the sale of this collateral. The only information which he had was contained in the business records of the Bank.

The Bank's records reflect that the office equipment and furniture were sold at auction by a Mr. Ed Jones. The total amount realized, after expenses, was $4,068.62. On cross-examination, Mr. Zollner did not know what auction fee was paid or any other details concerning the auction.

The Bank's records also reflected that IntraWest received a total of $1,288.40 from the United Consumers' Accounts Receivable. The Accounts Receivable were divided into two groups: the "Beta Receivables" and the "In House Receivables."

The Beta Receivables were given their name as collection was handled by Beta Financial Company. Beta Financial was an affiliate of United Consumers' franchisor. As part of the franchise agreement, United Consumers had the option to turn over a portion of it's receivables to Beta Financial for collection. Beta Financial would keep

any interest due on the receivables as the collection fee. Mr. Zollner testified that one check of approximately $1,100 was received from Beta Financial on account of the United Consumers' receivables. Mr. Zollner was unaware of what efforts were taken by Beta Financial to collect this receivable, and the Bank had made no inquiries as to the status of the remaining receivables.

The In House Receivables were those receivables which were not turned over to Beta Financial. On taking possession of the In House Receivables, IntraWest turned the accounts over to it's attorneys for collection. No effort was made by IntraWest's attorneys to collect the receivables. Approximately $200 was received on account of the In House Receivables.

At the request of the debtors, the Court took judicial notice of the debtors' schedules. The schedules reflect the accounts receivable were assigned a value of $32,000. Wells testified the $32,000 figure represented 85% of the outstanding receivables. He also testified that in his experience with United Consumers, historically only 10–15% of the receivables would be uncollectable.

The value assigned to the receivables by the debtors is partially supported by the testimony of Mr. Zollner. On cross-examination, he testified that the Bank would loan up to 75% of the value of the qualified receivables of a business. The 75% figure, of course, assumes there to be an ongoing business.

The schedules also reflect that United Consumers' office furniture and equipment had been given a value of $5,200. The debtor testified these were "fire sale" values. Specific items included a typewriter valued by the debtors at $1,500.00. The testimony of Mr. Zollner disclosed that $425.00 was received for that typewriter. The schedules also contained a Xerox 2600 valued at $1,800. Mr. Zollner testified that $510 or $610 was received for the Xerox.

## CONCLUSIONS OF LAW

As stated earlier, the evidence presented was, at best, inconclusive in many respects.

The testimony mainly consisted of hearsay, admissible under certain exceptions in the Rules of Evidence, and unsupported lay opinion testimony. While admissible under the Federal Rules of Evidence, the Court, as the finder of fact, considers much of the testimony to be of marginal probative value. The outcome of this dispute, to a large extent, must be determined by the allocation of the burden of proof.

Which party bears the burden of proof on what issues in this case is a complex problem requiring careful consideration. The starting point for the Court's analysis is 11 U.S.C. § 501(a). That section provides that a creditor may file a proof of claim. When such a proof of claim is executed and filed in accordance with the Bankruptcy Code and applicable rules, it constitutes *prima facie* evidence of the validity and amount of the claim. *Matter of Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206 (5th Cir.1983). B.R.P. 3001(f). Under 11 U.S.C. § 502(a), a claim for which proof has been filed is deemed allowed unless a party in interest objects.

Even in the event a party in interest files an objection to the claim, the evidentiary effect of B.R.P. 3001(f) remains in force. *In re Trending Cycles for Commodities, Inc.,* 26 B.R. 350 (Bankr.S.D.Fla. 1982). The objecting party carries the burden of going forward with evidence supporting his objection to the validity of the amount of the claim. *Matter of Townview Nursing Home,* 28 B.R. 431 (Bankr.S.D.N. Y.1983); *In re Breezewood Acres, Inc.,* 28 B.R. 32 (Bankr.MD.Pa.1982). Such evidence must be of a probative force equal to that of the allegations of the creditor's proof of claim. 3 *Collier on Bankruptcy,* ¶ 502.01[3] p. 502–17 (Rel. 10–9/83). If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant. *Matter of Texlon,* 28 B.R. 525 (Bankr.S.D.N.Y.1983).

### Has the Trustee Rebutted the Prima Facie Case?

The threshold question is whether the Trustee has rebutted the *prima facie*

effect of the proof of claim. In this case, the claimant, IntraWest, admits having collateral which secured the claim in question. The Trustee has presented evidence which indicates that the collateral was disposed of in a manner which realized only a fraction of its value. As discussed more fully, *infra*, the disposition of collateral in other than a commercially reasonable manner seriously affects a creditor's ability to collect any deficiency on the debt. Having considered the evidence, the Court finds that the Trustee has presented evidence of a probative force at least equal to that of the allegations of IntraWest's proof of claim.

### Allocation of the Ultimate Burden of Persuasion

Having found that the Trustee has rebutted the *prima facie* effect of IntraWest's burden of claim, the burden of proof, therefore, rests on IntraWest to show by a preponderance of the evidence that it's claim is allowable under § 502(b). The pertinent part of § 502(b) provides:

"(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition and shall allow such claim in such amount except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;"

Clearly the burden is on IntraWest to establish the amount of its claim. This issue, however, is not the subject of substantial dispute among the parties. The dispute centers on the "enforceability" of the claim. Which party bears the burden of proof of showing "unenforceability" is central to resolution of this case.

This Court has been unable to discover any cases that discuss which party must carry the burden of proving unenforceabili-

ty of a claim. The only reference of which the Court is aware is found at 3 *Collier on Bankruptcy*, ¶ 502.1[3], p. 502–18 (Rel. 10–9/83). *Collier* states that normally the objecting party has the burden of showing any affirmative defense such as the statute of limitations, usury, a transfer to claimants constituting a voidable preference or a fraudulent conveyance and any setoff or counterclaim.

The Court does not consider ·the term "affirmative defense", as used in *Collier*, to encompass an allegation of "unenforceability", as used in § 502(b)(1), in all cases. The examples listed in *Collier* are truly affirmative defenses, and the burden of proof would be placed on the objecting party had the claim been brought in a non-bankruptcy context. Clearly, Congress had not intended that the burden of showing unenforceability be placed on the objecting party in all cases. *See:* Sen.Rep. No. 989, 95th Cong., p. 62 (1978).

■ In the absence of a controlling Bankruptcy Rule of Procedure, the logical manner in which to allocate the burden of proof is to look to the applicable underlying law. If the claimant would bear the burden of showing enforceability in attempting to collect on its claim in a non-bankruptcy forum, the claimant must bear the same burden in order to have its claim allowed in bankruptcy. On the other hand, if the issue would truly be an affirmative defense in a non-bankruptcy forum, the burden of proof will rest on the objecting party.

In this case, the creditor is, in essence, attempting to collect a deficiency judgment against a guarantor of the obligation. The applicable law is, therefore, Part 5 of Article 9 of the Colorado Commercial Code. C.R.S. § 4–9–501, *et seq.* (1973). The Colorado case law has developed several technical rules in interpreting Article 9 and the allowance of a deficiency judgment.

The statutory authority for a secured party to collect a deficiency after the creditor has disposed of the collateral securing the obligation is found at C.R.S. § 4–9–504(2) (1973). In addition to providing this

right to the creditor, § 4–9–504 imposes certain obligations on the creditor. Of prime importance to this case is that in disposing of the collateral every aspect of the disposition, including the method, manner, time, place and terms, must be commercially reasonable. C.R.S. § 4–9–504(3) (1973).

In an action for a deficiency, the debtors are entitled to have the market value of the collateral at the time and place of sale offset against any balance due on the indebtedness. *First National Bank of Denver v. Cillessen,* 622 P.2d 598 (Colo. App.1980). When collateral is repossessed, there is a presumption that the value of the collateral is equal to the amount of the outstanding debt. *Community Management Ass'n of Colorado Springs, Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314 (1973). This presumption must be overcome by competent evidence. Where a disposition of the collateral has been made which is not in compliance with the Colorado Commercial Code, the amount received is not competent evidence of market value and the secured party has to prove value by other evidence. *Cillessen, supra; Tousley, supra.*

The cases conflict as to which party has the burden of proving commercial reasonableness when the creditor is seeking a deficiency judgment. *Compare: Marine Midland Bank-Central v. Watkins,* 89 Misc.2d 949, 392 N.Y.S.2d 819, 21 UCC Rep. 918 (N.Y.S.Ct.1977), with *Dulan v. Montana National Bank of Roundup,* 661 P.2d 28, 36 UCC Rep. 346 (Mont.1983). Most appear to place the burden on the creditor because it has greater access to the facts surrounding the sale. *See: Annot.* 59 A.L.R. 3rd 369. There appears to be no Colorado cases on this issue. This Court elects to follow the majority view, which is also the position expressed by the Tenth Circuit in placing the burden of proof on the creditor to prove "commercial reasonableness." *Transport Equipment Co. v. Guaranty State Bank,* 518 F.2d 377 (10th Cir.1975).

Based on the inconclusive nature of the evidence presented by IntraWest, the Court finds that IntraWest has failed to show that the collateral was disposed of in a commercially reasonable manner. The evidence reflects that only $1,288.40 was collected on accounts receivable, having a face value in excess of $32,000. There was virtually no evidence indicating what attempts had been made to collect on the receivables. Mr. Zollner testified that the accounts receivable were typically small in size. They averaged between $200 and $600. While it may not be cost-efficient to commence a suit against the account debtors, certainly a demand letter could have been sent.

Having found that IntraWest's disposition of the collateral was not commercially reasonable, the amount received from the disposition is not competent evidence of the value of the collateral. IntraWest produced no other evidence of value. The presumption that the value of the collateral was equal to the amount of the outstanding debt stands unrebutted. Accordingly, any attempt to collect a deficiency judgment would be unenforceable under Colorado law. Thus, IntraWest's claim, based on the guaranty of the United Consumers' obligation, must be disallowed.

The only portion of IntraWest's claim which is allowable is that based on the promissory notes of which Wells was the maker. The parties stipulated that the amount of the claim on those notes was $20,921.90. It is therefore

ORDERED IntraWest Bank of Grand Junction's Claim, No. 25, shall be reduced to an unsecured claim of $20,921.90.