**In the Matter of Carlton H. NOYES, Debtor.**

**Bankruptcy No. BK85–844.**

United States Bankruptcy Court, D. Nebraska.

March 31, 1986.

Steven C. Turner of Baird, for Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for Federal Land Bank.

Michael W. Heavey, Omaha, Neb., for debtor.

## MEMORANDUM OPINION RE REQUEST FOR RELIEF FROM STAY

TIMOTHY J. MAHONEY, Bankruptcy Judge.

Final hearing was held on February 11, 1986, on the Motion for Relief from the Automatic Stay filed by the Federal Land Bank of Omaha.

The debtor operates a feedlot and row crop operation on 320 acres of land in Harlan County, Nebraska. Approximately half of the land is in crop and half of the land is used for the feedlot operation, with improvements.

The debtor filed a Chapter 11 petition on April 17, 1985. He has remained in possession as debtor-in-possession since that date.

The Federal Land Bank has a claim of $258,084.89 as of April 17, 1985, with interest accruing thereafter, if permitted under § 506 of the Bankruptcy Code, in the amount of $89.96 per day. The Bank's claim is secured by a real estate mortgage on the 320 acres.

The feedlot is capable of handling 6,500 head of cattle. Expert testimony was adduced by both parties concerning the proper manner of valuation of the feedlot and concerning the specific value of the feedlot. The Federal Land Bank's witness provided a written appraisal, and after comparing the feedlot in question with several feedlots which had sold in the last several years, gave his opinion that this feedlot should be valued at $10 per head of cattle which could be handled by the operation. In other words, he valued the feedlot at $65,000. The remainder of the land was valued at $85,000, for a total valuation of $150,000. It was his opinion that the land and the feedlot had declined in value approximately 1% per month during 1985.

The witness for the debtor agreed that the feedlot should be valued on the basis of a per head calculation. However, it was his opinion that $46 per head would be a more appropriate figure to use in attempting to determine the fair market value of the operation. If the Court would accept his valuation, the feedlot would be worth $299,000 and the land worth $85,000. Therefore, the total value of the property would be $384,000.

Both parties agreed that the Federal Land Bank has a possessory security interest in Federal Land Bank stock worth $12,500. This amount needs to be added to any valuation figure to determine the total valuation of the security held by the Land Bank.

From the evidence presented, the Court determines that the Federal Land Bank stock is worth $12,500. The land is worth $85,000. However, the Court is not bound by the valuation testimony of the experts and does not accept the conclusion of either expert with regard to the per head value of the operation. Neither witness provided adequate justification for the valuation, although both witnesses testified concerning the same comparable sales. The three comparables used by the appraiser for the Federal Land Bank included per head valuations of $50, $35 and $22. The appraiser then adjusted those prices for several factors, including time of sale, location, size, improvements, quality and terms. After making the various adjustments, he determined that this property was worth $10 per head.

The witness for the debtor criticized the various adjustments and comparability of the various sales used by the first appraiser. It was his opinion that statewide feedlots should sell for $46 to $50 per head.

This Court believes that the market value on a per head basis is someplace between $10 per head and $50 per head. Based upon an analysis of the written ap-

praisal and the testimony by both appraisers, the Court determines that the fair market value of the feedlot with improvements, on the basis of a per head price, is $25 per head. Using $25 per head and 6,500 head capacity, the fair market value is $162,500.

■ The value of all of the security for the claim of the Federal Land Bank is $260,000 as of the date of hearing. The evidence is hotly disputed with regard to whether or not the land values and the value of the feedlot has declined since the date the initial petition was filed, April 17, 1985. This Court accepts the evidence that the land value has declined at a rate of 1% per month since April of 1985. It is obvious from a review of the numbers that the Federal Land Bank was fully secured as of the date the petition was filed. It, therefore, has a right to accruing interest on its claim pursuant to § 506(b). Such accruing interest equals approximately $27,000 as of the date of the hearing and, when such interest is added to the claim of approximately $258,000, it is apparent that the Federal Land Bank has moved from a fully secured position to an undersecured position.

No offer of adequate protection has been made by the debtor because the debtor's position is that there is an equity cushion which adequately protects the interest of the creditor. As stated above, this Court finds that there is no equity cushion.

### Conclusions of Law

■ The debtor does not have equity in this property. The parties have agreed that the property is necessary for an effective reorganization. Therefore, relief shall not be granted pursuant to § 362(d)(2).

■ The interest of the creditor is not being adequately protected. Interest on its claim continues to accrue at the rate of $90 per day and the land continues to decline at approximately 1% per month. The debtor is required to provide adequate protection of the creditor's interest. For purposes of this case, such adequate protection must consist of a payment of the accrued interest from the date of filing the petition and continuing payment on a monthly basis of such accrued interest. In addition, such adequate protection requires that the loss of value to the real estate of 1% per month must be provided for by the debtor. Therefore, an appropriate adequate protection payment concerning the decline of value of the real estate would equal a payment of 1% of $85,000 or a payment of $850 for the month of February, 1986, and a similar amount each month thereafter.

■ Since it was unclear until the issuance of this opinion, whether or not the interest on the debt would be permitted to accrue pursuant to § 506(b), the debtor should be granted some time to make the appropriate payment to bring the Federal Land Bank to its fully secured position.

The automatic stay is modified pursuant to § 362(d)(1) as follows:

1. On or before May 1, 1986, debtor must pay to the Federal Land Bank an amount equivalent to 1% of the value of the land which is not used for the feedlot. Such payment on May 1 must include three monthly payments of such percentage amount. Those months are February, March and April of 1986. The amount for February is $850. The amount for future months may be calculated based upon the declining valuation.

2. On the first day of June and on the first day of each month thereafter, the debtor shall make the appropriate 1% payment to the Land Bank.

3. On or before May 1, 1986, the debtor shall pay the Land Bank the amount of the monthly accrued interest, calculated on $258,084.89 for the months of February, March and April of 1986.

4. The interest which accrued from April 17, 1985, to January 31, 1986, may be paid by making equal monthly installments beginning on June 1, 1986, and continuing for a period of nine months until paid in full.

5. On June 1, 1986, and on the first day of each month thereafter, the debtor shall make a payment to the Land Bank of the

118

monthly accrued interest for the preceding month.

6. If any of the above-listed payments are not made on the required date, time being of the essence, an order for relief from the automatic stay shall be entered by this Court upon receiving affidavit evidence from the Federal Land Bank of the nonpayment. Such order shall be entered ex parte and without hearing.

7. The automatic stay remains in effect between the date of this opinion and May 1, 1986, pending the appropriate payments.

Separate journal entry to follow.