**In the Matter of Gordon H. BRADLEY and Dorothy M. Bradley, Debtors.**

**Bankruptcy No. 85–01915D.**

United States Bankruptcy Court, N.D. Iowa.

Dec. 14, 1988.

Michael McDonough, Moyer & Bergman, Cedar Rapids, Iowa, for debtors.

John M. Titler, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for Federal Land Bank of Omaha.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge, Sitting by Designation.

This contested matter concerns the amount of interest to be paid on a secured claim under a confirmed plan of reorganization. After a telephonic hearing held February 29, 1988, the matter was taken under advisement, and the parties were invited to submit briefs. The debtors filed a brief on April 4, 1988. No brief has yet been filed by the Federal Land Bank of Omaha.

The facts are fairly simple. On September 10, 1985, Gordon and Dorothy Bradley filed their chapter 11 case. The Federal Land Bank of Omaha ("FLB") timely filed a proof of claim for $346,766.58 "plus daily interest and attorney's fees and costs accruing" after the date of the bankruptcy filing. The underlying note provided for a variable interest rate, and was secured by first mortgages on two parcels of the debtors' farmland valued in the debtors' schedules at $504,000.00. FLB's claim was thus fully secured at the time the bankruptcy petition was filed.

The financial crisis afflicting midwestern agriculture caused FLB's collateral to depreciate during the period immediately following the bankruptcy filing. Presumably because of this depreciation, FLB moved for relief from stay on January 14, 1986, citing a lack of adequate protection of its interest in the property. In support of its motion, FLB stated that "[t]he Debtors have no equity in the real estate which is the subject of the mortgage granted to the Federal Land Bank of Omaha." On February 10, 1986, the parties filed a stipulation which provided for continuation of the stay conditioned upon, *inter alia*, the debtors making cash payments to FLB and granting to it a first mortgage on a previously unencumbered twenty acre parcel of farmland.

On September 19, 1986, the debtors filed a plan of reorganization containing the following provisions:

> The allowed secured claim of the Federal Land Bank shall be paid as follows:
>
> . . . .
>
> (b) To the extent allowed, interest shall accrue on this claim from and after the filing of the petition herein at the rate of 10.5% per annum.
>
> (c) To the extent allowed, interest accruing from the filing until confirmation of the plan shall be added to the principal balance of this claim.

Plan of Reorganization ¶¶ 3.4, 3.5. The plan's treatment of FLB's secured claim [1] was premised on the assumption that the court would allow FLB's secured claim in the amount of $314,500. Plan of Reorganization ¶¶ 3.4(c), 3.5(c). Based on objections subsequently voiced at the confirmation hearing, FLB rejected the plan.

On March 27, 1987, the court held a final confirmation hearing on the Bradleys' plan. Among other things, FLB argued that if the plan's language was construed to mean that FLB would receive deferred cash payments totaling only $314,500 on account of its claim, which was fully secured at the time of filing, the plan failed to satisfy section 1129(b)(2)(A)(i)(II). FLB also argued that to the extent subsequent depreciation had rendered its claim undersecured, it was entitled to a section 507(b) superpriority claim, stating:

> There has been a loss of value of the collateral which secures the loan of the Federal Land Bank of Omaha, which loss

---

**1.** The plan actually allocated FLB's claim between the two parcels of farmland, thus treating FLB as holding two secured claims. Because the claims were treated identically by the plan, and for ease of discussion, FLB is referred to as holding a single secured claim.

of value has occurred between the date of the filing of the Petition and the confirmation date. The loss of value is not afforded protection in the Plan by inclusion in the amount of the allowed secured claim to be paid with interest by the debtor. Therefore, the Federal Land Bank of Omaha is entitled to an administrative claim under the provisions of Section 507(b)....

Objection to Confirmation ¶ 3.

In support of this latter argument, FLB introduced the testimony of a real estate appraiser, Robert Maiers, who testified that the value of the farmland as of January, 1986—approximately four months after the Bradleys filed bankruptcy—was $300,000. Rec. Confirmation Hearing at 6. Mr. Maiers further testified that as of the date of the confirmation hearing—March 27, 1987—the value had declined to $280,000. Rec. Confirmation Hearing at 7.

In addressing FLB's objections to confirmation, the court first held that under section 1129(b)(2)(A)(i)(II), the holder of a secured claim must receive the amount of his allowed secured claim determined as of the time of filing, rather than the time of confirmation. For the purpose of the confirmation hearing, the court found that the value of the farmland securing FLB's claim "was equal to or in excess of" FLB's claim as of the date of filing. Therefore, the court held that for the plan to be confirmable, it must provide for the payment of deferred cash payments totaling the present value of $346,766.58. The court then construed the language of the plan as providing for the payment of that amount. Rec. Confirmation Hearing at 12. An order and judgment allowing FLB's secured claim in the amount of $346,766.58, and confirming the plan was entered on June 23, 1987.

On October 7, 1987, FLB filed an "Application for Determination of Claim." In its Application, FLB submitted that it was entitled to postpetition interest on its secured claim by virtue of the language of the plan. FLB alleged:

4. The only dispute remaining is regarding the commencement date for accrual of interest on the claim of the Federal Land Bank of Omaha.

5. ... The Federal Land Bank of Omaha asserts that the claim is to bear interest from the filing date, with credit against the accrued interest for adequate protection payments made by the Debtors.

6. The Federal Land Bank of Omaha has offered to resolve the dispute by accepting thirty equal payments ... representing accrual interest for one year prior to the hearing on confirmation.

7. Both the specifications for payment of the ... claims held by the Federal Land Bank of Omaha, which claims accumulate to $346,766.34, specifically state that 'To the extent allowed, interest shall accrue on this claim from and after the filing of the Petition herein at the rate of 10.5% per annum.'

8. The Federal Land Bank asserts that its allowed secured claim should be determined to include accrued interest from the filing date of the Petition as specified in the Reorganization Plan.

The debtors resisted the application arguing that under section 506(b) the holder of a secured claim was entitled to postpetition interest only to the extent that the claim was oversecured. The debtors contended that FLB's claim was never oversecured, and thus postpetition interest was neither required under the Code nor provided under the plan. The debtors proposed to make thirty payments of $30,492.08 on FLB's claim, which represent payment of the allowed secured claim of $346,766.58 with interest commencing from the date of confirmation. FLB would have the court require that the debtors make thirty annual payments of $34,674.67, to provide for one year's accrual of postpetition interest.

The issue before the court is whether FLB is entitled to any postpetition interest. The following values of FLB's collateral relative to its claim of $346,766.58 have been established:

| Date | Source of Valuation | Value of Collateral | Relation to Claim |
|------|---------------------|---------------------|-------------------|
| 9–10–85 | Court's finding at final confirmation hearing | Not specified | Equal to, or greater than, the amount of claim |
| 1–86 | Testimony of FLB's real estate appraiser at final confirmation hearing | $300,000 | Less than amount of claim |
| 9–19–86 | Debtors' Plan of Reorganization | $314,500 | Less than amount of claim |
| 3–27–87 | Testimony of FLB's real estate appraiser at final confirmation hearing | $280,000 | Less than amount of claim |

FLB has submitted no additional evidence as to the extent and duration of any oversecured status it may have enjoyed. Because FLB has submitted no memoranda in support of its Application, I infer that it is satisfied to rest on the argument imbedded in its motion. The lack of any additional factual development or legal argument on the part of FLB leads me to conclude that FLB takes the position that regardless of the over- or undersecured character of its claim, it is entitled to postpetition interest since the plan's language appears to so provide.

As a general proposition, the Bankruptcy Code does not permit interest to accrue on claims after the bankruptcy petition is filed. Section 502(b)(2) provides:

> [I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (2) such claim is for unmatured interest.

11 U.S.C. § 502(b)(2). The Supreme Court has explained the rationale underlying the pre-Code version of this proposition:

> Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved: ... Courts have felt that it would be inequitable for anyone to gain an advantage or suffer a loss because of such delay. Accrual of simple interest on unsecured claims in bankruptcy was prohibited in order that the administrative inconvenience of continuous recomputation of interest causing recomputation of claims could be avoided. Moreover, different creditors whose claims bore diverse interest rates or were paid by the bankruptcy court on different dates would suffer neither gain nor loss caused solely by delay.

*Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163–64, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) (citations and footnote omitted).

Section 506(b), however, creates an exception to this rule,[2] permitting the accrual of postpetition interest to the extent that a claim is oversecured:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim ...

11 U.S.C. § 506(b). The rationale for this exception is simply that no unfairness to creditors *inter se* results when the accrued interest is assessed against property already encumbered by a specific claim.

> [T]he interest provisions of the Code and its predecessors, as interpreted by the

---

**2.** Another exception to this rule can be found in section 726(a)(5) which permits the payment of postpetition interest on unsecured claims after the liquidation of the debtor's assets has established the solvency of the bankruptcy estate.

Supreme Court for almost a century, are premised on the equitable principle that the unencumbered assets of a debtor's estate will not be used to benefit one class of creditors at the expense of another class. Such would be the case if unencumbered assets, otherwise available for the payment of unsecured claims, were used to pay postpetition interest on undersecured debt. Allowing a claim for postpetition interest by an oversecured creditor, on the other hand, is not inconsistent with that equitable principle, because only assets encumbered by the creditor's lien will be used to fund the payment of postpetition accrued interest.

*In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380, 1387 (5th Cir.1986) *aff'd on rehearing en banc* 808 F.2d 363 (1987), *aff'd sub nom. United Savings Assoc. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988). An almost Posnerian economic efficiency justification for the rule has been advanced as well.

In [consensual secured transactions] ... [t]he parties have bargained with reference to a specific security with the expectation that the creditor may sell this security and realize the entire amount of the outstanding obligation, including interest accrued to the date of payment. To deny ... a creditor postpetition interest, when the amount of the security is sufficient to cover both the principal and interest due, would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailment of the free flow of capital in our economy. Thus, granting postpetition interest to mortgages [sic] and other holders of contractual liens satisfies the expectations of the parties and strikes an equitable balance between the creditors and the debtors.

*In re Boston and Maine Corp.*, 719 F.2d 493, 497 (1st Cir.1983) (citations omitted) *cert. denied* 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984).

■ The essential limitation of section 506(b)—postpetition interest only accrues

to the extent of the creditor's excess security—is triggered either by the decline of the value of the collateral, *see In re Noyes*, 62 B.R. 115, 117 (Bankr.D.Neb.1986), or by the accumulation of the interest itself, which when added to the amount of the allowed secured claim exhausts the oversecurity, *see id.* Whether by the independent or mutual operation of these factors, once the value of the collateral no longer exceeds the amount of the claim it secures, postpetition interest ceases to accrue. *See United Savings Assoc. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, ——, 108 S.Ct. 626, 631, 98 L.Ed.2d 740, 749 (1988) ("Since this provision permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest.") (citation omitted).

■ FLB apparently reasons that the plan's statement "[t]o the extent allowed, interest shall accrue on this claim from and after the filing of the petition herein" necessarily means that FLB is entitled to postpetition interest for an entire year after the bankruptcy petition was filed. Given that FLB itself moved for relief from stay in January of 1986 based upon the declining value of the collateral and that FLB's own appraiser testified at the confirmation hearing that the value of the collateral was some $46,000.00 less than the amount of FLB's claim as early as four months after the filing of the petition, FLB cannot seriously contend that its claim was oversecured for an entire year after the bankruptcy filing. FLB either fails to comprehend the import of section 506(b) or erroneously assumes that the debtors could, and did, override its limitations to bestow especially generous treatment upon FLB's claim.

To address the first of these possibilities, such evidence as we have seems to establish that FLB's claim was no longer oversecured at the beginning of 1986. Therefore, the command of section 506(b) is that interest could not accrue after that date.

Second, the dependent clause in the quoted provision from the plan seems quite unambiguously to include by reference the

limitations imposed on postpetition interest by section 506(b). Initially, the plan's phrase "to the extent allowed" is roughly parallel (if any bit of normal English usage has a parallel in Code phraseology) in syntax and substantive import to the Code's phrase "to the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed ..."

More significantly, the plan may not include provisions inconsistent with the Code. *See* 11 U.S.C. § 1123(b)(5) ("a plan may ... include any other appropriate provision not inconsistent with the applicable provisions of this title"); *Cf. In re Spadel*, 28 B.R. 537, 540 (Bankr.E.D.Pa.1983) (where confirmed plan provided that a lien, which was not avoidable under section 506(d), was avoided, court holds that the operative provision was inconsistent with section 506(d) and thus invalid under section 1322(b)(10)). If FLB's construction were accepted, it would of course result in more, rather than less, favorable treatment of FLB's claim than is required by the Code. Nevertheless, such a provision would be facially inconsistent with section 506(b) and at odds with its underlying rationale. *See Timbers of Inwood*, 484 U.S. at ——, 108 S.Ct. at 631, 98 L.Ed.2d at 749 ("Section 506(b)'s denial of postpetition interest to undersecured creditors merely codified pre-Code bankruptcy law, in which that denial was part of the conscious allocation of reorganization benefits and losses between undersecured and unsecured creditors.") Thus, even if the plan provision were ambiguous, the construction advanced by FLB would not be adopted.

Assuming that the plan simply incorporates section 506(b) to the extent it is applicable, the real question in this case is to what extent, and for what period of time, was FLB's claim oversecured? At the confirmation hearing, the court held that as of September 10, 1985, the date of the bankruptcy filing, FLB's claim was fully secured. Aside from that, and the $504,000.00 figure found in the schedules accompanying the debtors' petition, there is nothing in the record indicating the exact amount, if any, of oversecurity at any point

in time. All the evidence suggests that by January 1986 the value had declined below the amount of the claim.

Section 501(a) provides that a creditor may file a proof of claim. FLB's original proof of claim included a claim for postpetition interest which would seem to be sufficient for purposes of section 506(b). *See In re Fawcett*, 758 F.2d 588, 590 (11th Cir. 1985) (court holds that language in original proof of claim that "[f]or purposes of section 506(b) of the Bankruptcy Code, postpetition interest may be payable" is "sufficient notice to the debtor that the [creditor] was asserting a claim for postpetition interest"). Since FLB's proof of claim was executed and filed in accordance with the bankruptcy rules, it constituted prima facie evidence of the validity and amount of the claim. Bankr.R. 3001(f). The actual amount of the postpetition interest claimed was not, however, specified.

Under section 502(a), the claim would have been allowed had not the debtors objected. The debtors' objection, however, does not obviate the evidentiary effect of Rule 3001(f); rather, by objecting the debtors assumed "the burden of going forward with evidence supporting [their] objection to the validity of the amount of [FLB's] claim." *In re Wells*, 51 B.R. 563, 566 (Bankr.D.Colo.1985) (citations omitted). The debtors are required to produce "evidence ... of a probative force equal to that of the allegations of the creditor's proof of claim." *Id.* (citation omitted). The debtors have submitted excerpts from the transcript of the final confirmation hearing which suggest a fairly substantial postpetition decline in the farmland's value. They thereby suceeded in overcoming the prima facie effect of the proof of claim, and "the ultimate burden of persuasion then rests on the claimant." *Id.* (citation omitted).

■ FLB must shoulder the burden of proving the amount of its claim to postpetition interest by demonstrating to what extent, and for what period of time, its claim was oversecured. *See In re Mitchell*, 81 B.R. 171, 173 (Bankr.D.Dist.Col.1988) ("the burden is on [the secured creditor] to estab-

lish the amount of postpetition interest to which it is entitled"); *see also Wells,* 51 B.R. at 567 ("Clearly the burden is on [the secured creditor] to establish the amount of its claim."); *cf.* 11 U.S.C. § 362(g)(1) ("In any hearing under subsection (d) or (e) of this section concerning relief from the stay or any act under subsection (a) of this section—the party requesting such relief has the burden of proof on the issue of the debtor's equity in property"). There is no evidence in the file to suggest that FLB has even attempted to meet this burden.

Because neither the amount of the excess security value nor the duration of any period during which FLB was oversecured can be ascertained from the evidence, it appears FLB has failed to carry its burden and its claim for postpetition interest must be denied.